Case number 23-5149, J. Gregory Sidak v. United States International Trade Commission et al., at balance. Mr. Salzman, for the at balance. Mr. Landau, for the appellee. Whenever you're ready. Thank you. Good morning, and may it please the Court, Joshua Salzman, on behalf of the International Trade Commission. The District Court here committed a series of errors in entering an injunction that will prevent the Commission from even determining whether plaintiff Gregory Sidak improperly retained the confidential business information of private companies like Apple and Intel in violation of a voluntarily assumed obligation. Mr. Salzman, if I can ask you a question at this threshold. Is it the ITC's position that this investigation is based solely on the protective order? So, I think the enforcement here is predicated on the protective order, but the protective order goes hand in hand and is only applicable to Mr. Sidak because of his separate agreement signed three months later in November of 2017 when he signed that acknowledgement that you to whether sanctions should be imposed is based on the protective order, solely on the protective order. I agree that under the Commission regulations that form the basis for the investigation here, what he is being investigated for, and I do want to emphasize that we are still just at the preliminary phases of that investigation, is a possible breach of the protective order. But I don't think you can analyze the protective order in a vacuum without recognizing that the reason we are here is because when that protective order issued in August of 2017, it had no adverse impact on Mr. Sidak. I just want to be just clear that the ITC is not relying on the fact that Mr. Sidak may have violated some separate statutory or regulatory requirement. That the investigation is based solely on the violation of the protective order. That is how the letter from the Commission Secretary is framed. It is framed in terms of the protective order. Okay, so you are not claiming any broader investigative authority. Yes. I think that's actually quite important. And I'm happy to engage on that and try to explain to you why I think under the fact here, but I didn't want to. The merits aren't directly before us, but what is the government's colorable argument for being able to have a proceeding whose sole purpose is to enforce an order entered by an unconstitutionally appointed ALJ? You know, I think it sounds shocking when you say the order is unconstitutional. It has a lot of shock value, but it's actually much less remarkable than you might think. So even the district court here, for example, seemed to assume that this order could still be enforced against Apple and Qualcomm. And for example, in the Ryder case, Supreme Court held that military judges were unconstitutionally appointed. It provided a remedy to the plaintiff there. It said there were probably going to be seven to 10 additional cases that would be affected by its ruling. But the court suggested that habeas claims by people whose cases had otherwise become final would almost surely fail. And the reason is because for non-jurisdictional defects, like an appointments clause defect, finality has always been understood to continue to severely restrict the scope of available relief. And with good reason, the Supreme Court has recognized for hundreds of years that it be horribly disrupted if a defect in title could somehow unsettle long-settled expectations. And I think that's particularly true here with the reliance interests. So that then, I guess, comes back to the argument you did make about untimeliness. And, you know, he should have teed this up. We've got two different proceedings, right? One is Qualcomm versus Apple before an unconstitutionally appointed ALJ. The other one is ITC versus CIDAC for some sort of enforcement action before a lawfully constituted ITC. That's right, Your Honor. But I, first of all, on the merits we... It's very odd to imagine, if that's the right way of thinking about it, you know, the witness, the expert witness sort of has an obligation to raise the appointments clause issue in the first proceeding. So I want to distinguish between two different merits arguments we've made since we seem to have, and I'm fine with this, we seem to have skipped over the ripeness argument. We'll come back to that, I know. But I want to distinguish between two arguments because they have different implications. One is sort of a forfeiture, you might think of it as a consent argument. In November, when he signed that agreement, in November of 2017, when he signed it, he agreed, in his own words, he'd read the protective order and agreed to abide by his terms. At that point, he voluntarily relinquished, and he challenged having to abide by the restrictions. And remember, he was doing that because he wanted a benefit. He wanted access to confidential He wanted to be able to earn a fee as an expert witness for Qualcomm. And in order to get the documents necessary to perform that function, he had to agree to abide by reasonable safeguards to ensure that they were only used for proper purposes. So that's argument one. I have a question about that. Where does the authority come then to bind Mr. Sidek? Is it from his consent, or is it from the protective order that was issued by the ALG? I would say it comes from his consent. It comes from, well, the protective order. So at the time that the protective order was issued in August of 2017, it did not bar Mr. Sidek from anything. There was a statute. There was a statutory backdrop. That's a general term that applies to anybody who participates in the proceeding. And then the order itself requires people who participate to sign a letter of acknowledgement. But the order, by its terms, even without a letter of acknowledgement, would apply to an expert like Mr. Sidek, it seems to me. Well, you start from the statutory backdrop, right? I think it's important to understand that the protective orders are rising against the backdrop of Section 1337N. That's a categorical prohibition on sharing confidential information disclosed to the public. You could characterize it as the permission slip. You would be barred, that Qualcomm would have been barred from sharing Applin Intel's information with Mr. Sidek, but for the protective order. And the protective order provides a mechanism that allows for sharing, but also, as one would reasonably expect, imposes reasonable conditions, says only use it for purposes of this investigation, keep the material safe, destroy or return it at termination of the proceeding. And anybody who wants the benefit of being able to take advantage of that authorization, that exception to the statute, the mechanism for sharing information, has to agree to abide by reasonable terms. And that's why you should be going after Qualcomm, not Sidek. Well, I don't think that's right under the circumstances here, because Mr. Sidek made representations. Everybody reasonably relied on the representations that he would abide by the conditions that went hand in hand with his receipt of that information. But as a legal matter, the conditions are void. There never were any conditions. It was as if something called a protective order was issued by four or five random people in the phone book, and they called it an ITC protective order. I think, right? I actually don't agree with that, Your Honor. And the reason I would say that is because appointments of defects are non-jurisdictional. They certainly can be a basis when timely raised for setting aside governmental action. But it is not as if they never occurred or that an order taken by an improperly appointed official can never be given legal effect, even years later and when first challenged through a collateral action. I think Mr. Sidek here had the opportunity to raise the issue to the committee. I mean, so you're trying to separate the consent and voluntariness aspect of your merits argument from the consent aspect from the timeliness aspect. I think those are two separate arguments. Okay. So on the voluntariness point, I mean, if a private party goes to work for the government, you know, wants to earn a living like this guy and is forced to sign a nondisclosure agreement to get access to classified information or government information or whatever, right? That person is not thereby barred from bringing a first amendment challenge to argue that the nondisclosure is overbroad or whatever, right? So consent can't bar the constitutional challenge to the governmentally imposed nondisclosure requirement. Well, I think that's, I don't want to speak in such categorical terms because for example, in CFTC versus Schor, and then the federal circuit has a couple of cases involving their inter partes review scheme that we've cited, the Siena Corp and the Valve case. When you seek out a particular judicial forum, sometimes that can go hand in hand with relinquishing a constitutional challenge. And that's- I'll refine it just a little bit. Doesn't automatically, the fact of the voluntary aspect of this is not always a showstopper. I'm not going to say it's always dispositive, but I'm saying in analogous circumstances- Seems a little different. The litigant who goes to the ITC seems a little different from the expert who's, and this is what he does. He supports clients wherever they are. Fair enough. He voluntarily chose this engagement. He voluntarily chose to put his name on a document where he assured the commission, ensured affluent intel, that he would abide by some reasonable restrictions to safeguard that information. Did Qualcomm have gone to an article three or other tribunal or is this sort of proceeding only go to the ITC? This sort of, the specific remedy that Qualcomm was seeking, this was patent infringement litigation. That's obviously certainly the issue that can be brought in district court. The ITC offers a particular remedy, which is an exclusion order. Essentially, all of the iPhones would have been stopped at the border. So it seems a little aggressive to say, oh, they made a choice to go to the forum with the questionably appointed judge, so tough luck. So again- That's the forum that Congress has made available for this kind of- And I think that's Qualcomm. I think we can separately think about Mr. Sydak here, who chose to take an engagement and chose to accept access to certain documents on certain reasonable conditions. And once affluent intel had relied on those representations and relied on the fact that the commission will be there to enforce the security as Congress intended for 1337N. Let me ask you about one of ITC's other regulations, though, about sanctioning non-signatories to protective orders. So that regulation provides that ordinarily, if someone is not a signatory, they can't be held to violate a protective order. However, if there's good cause shown, even a non-signatory can be sanctioned for violating a protective order. So doesn't that suggest that the protective orders have some authority or some legal force absent the consent of a person who's a signatory to the protective order? I mean, because apparently the ITC can sanction someone who's a non-signatory. Yeah, and that may well be. We've relied here on his status as a signatory, which I think makes this at least a much easier case. I can understand that that's the government's litigating position, but it doesn't tell us where the authority comes from, right? Because if the protective order is the thing that is doing the work, and that was issued by a non-constitutional ALJ, that's a problem. If the consent is what's doing the work, then maybe, of course, it might be less of a problem. But it seems like on the ITC's own terms, they're recognizing that the protective orders have legal authority separate from to issue these are and to enforce them. I'd refer the court to 19 USC 1335, which is a broad delegation of rulemaking authority, and then 1337N, which I've referenced several times, and specifically contemplates that the commission will establish regulations and procedures for promulgating protective orders. Because otherwise, that's the only mechanism through which you have an exception to 1337N's otherwise categorical bar on the disclosure of the information. I'm not suggesting they didn't have authority to issue the protective order. I mean, in a statutory sense. But if the protective order is what is binding on Mr. Sidek, and that order was issued without constitutional authority, then that's a problem. Well, it's only a problem, assuming you get past consent, it's only a problem if you think he has a timely challenge. Because of course, Lucia, Ryder, they have always taken pains to emphasize that they granted relief to parties who raised timely challenges. Ryder specifically, as I mentioned earlier, distinguished any kind of collateral attack through habeas. And here, there is a value in repose. That's the principle that Ryder and Lucia carry forward from the de facto officer doctrine. This idea that it would be incredibly disruptive, if the chaos would result, if every act taken by an unconstitutionally appointed officer was subject to challenge, collaterally, years after the proceeding had gone by. But a defendant who's convicted in an unconstitutional proceeding has direct review, Article III review, and once the Supreme Court denies cert, that's over. It's over, and habeas is different, right? Tough luck. That's different from here. I mean, SIDAC as prospective administrative defendant facing exposure, that happens when they notice the enforcement proceeding. So SIDAC, I think his brief definitely tries to harp on exactly that theme, but I think it's belied by the content of the protective order. From the moment he signed it, he was under certain obligations to safeguard information, to limit his use of it in certain ways, to report leaks. And then I think the clearest example is in April of 2019, when the 1065 investigation terminated, he was under an affirmative obligation enforceable by the commission to return or destroy all of the confidential information that he had received through the proceeding. His rights were directly at issue. He had obligations at that time. And how exactly would you have had him raise this in the original proceeding, or run into district court, or file, like, you know, get separate counsel, you know, motion of witness to have AFJ declared unconstitutionally appointed? So there are various stages at which he could have done it, and I'm not going to tell you whether give me the most plausible one, because any of them strike me as off. Okay, well, I've got three, and you, maybe, so first, when this document is first put in front of him, he had an option not to sign, he had an option to sign, but say, I don't see, no, but Flav, if you are going to represent to a governmental body and to private parties who are depending on that governmental body to protect their information, that you are intend to abide by a series of conditions, that you have doubts about its enforceability, you should do that in a contemporaneous way. And I do want to emphasize, it's not like Lucia was an unknown issue. This had already, I think, been put by this court in November of 2017. In fact, I think we filed our cert petition in November of 2017, or it was a brief in opposition nominally, and then it was decided by June of 2018. So this issue was very much out in the world. The Supreme Court was granting cert at around this very same time. But then, do I think the sophisticated, very sophisticated counsel who are representing Qualcomm and Apple in this proceeding were aware of Lucia? Absolutely. But, so he was a paid expert for Qualcomm. He was certainly on the same team, to put it nominally, as Qualcomm's lawyers in the case. No, they certainly owed it to the company, not to him. But as far as I know, he wasn't separately represented. No. I'm not saying that. What I am saying is that if you are going to sign a document agreeing to abide by certain conditions, particularly as part of a quid pro quo, you're getting the benefit of the access that it provides. I don't think it's fair to complain about it afterwards. I have no issue with any of that. I just think that if you sign a document saying, I'm going to keep your secrets safe, that you should probably keep those secrets safe. And that if you consent to enforcement of that, whether it's... No, you don't think that every expert should abide by it, right? No, I don't. But I do think that when you sign a document, you should make certain that you intend to, that you're serious about abiding by it, and that if you have doubts about its enforceability, you should give notice. But I did say I had three answers to Judge Katz. I'm happy to answer a follow-up, but I didn't want to forget that. Obviously, you should have raised it when you signed it, in order to sign it. With reservations, yeah. Or attach something noting his doubts about its enforceability. So that's option one. Option two is certainly at any point while the matter was before the commission, he could have either filed even an informal letter, given notice, so the parties were at least aware. Because the reason I harp on this, and I realize it would be an unusual thing, but if he had given notice while this was before the commission, the commission could have taken corrective action. They could have shored this up and put it on clear constitutional footing. And instead, we've ended up in a situation where the district court is just giving him a permanent get-out-of-jail-free card. So, even in advance of Lucia... So, first of all, I want to emphasize that even before Lucia was decided, in anticipation of that decision, the full commission did ratify the appointments of the ALJs. So then you get into the separate question of what to do about the individual actions. And as I've mentioned a few times, and really do want to underscore, appointments cause concerns aren't jurisdictional. And therefore, the commission, I think, deferred to the parties. I can't get inside the heads of what was going on there. What I can tell you... I'm not aware of them not, but if you're about to tell me they don't, I just don't know. Okay. Yeah, I apologize. This wasn't something that I focused on in preparing for today's argument. I'd be happy to supply the court with... I'll talk to my client right after this and let the court know. But yeah, no, I understand. And I apologize. That just wasn't something that I thought was going to be a good issue here. But to return to the fundamental question here, because these are non-jurisdictional, if Apple was happy with this, and Qualcomm was happy with this, and the litigation is moving forward, there was no affirmative obligation on the part of the commission or the ALJ to take specific corrective action. And there was some onus on a party who wanted to get out from under an action that had been taken by the ALJ prior to the ratification to note it for the commission, so that the commission could take that corrective action. And this brings me to the third and final point at which Mr. Sidak could have done something. Number two is, at some point, send in a letter. They emphasize, for example, that Professor Calabresi submitted a letter while the matter was before the commission. Certainly he could have done the same thing. And the third thing is he could have filed basically the suit he ultimately filed, but filed it in April, certainly not later than April of 2019. Yeah, essentially asserting, I think the suit in April of 2019 would have effectively said, I am currently under the purported compulsion to return or destroy documents. I don't want to return or destroy those documents. I think this order is unenforceable. And accordingly, I'm seeking a declaratory judgment that that obligation is null and void. So I think that would have been the time. But to give no notice at all of a possible intent not to comply with the voluntary undertaken obligation, to allow the commission, to allow the private parties to rely on the assumption that he's going to do what he said he was going to do. And only then, when he's years later under investigation for a possible breach, to say, actually, this is unenforceable against me. That's where I think we run into problems. Um, I we haven't touched at all on right now. I'm very happy to talk about this is for as long as the court is interested. But I did want to at least briefly touch on rightness because it is a tremendous departure from normal orderly judicial review. So for a court to consider, even a constitutional argument, even a threshold argument, while the investigative body here, the commission is still ascertaining the relevant facts, deciding whether a breach even occurred. I Yeah, so I think the commission is still in the process of even ascertaining the relevant facts. For example, Mr. CIDAC has raised certain legal arguments to the commission about why he thinks the conduct that he's already admitted to was, in fact, allowed under the protective order. And I think we would normally allow under bedrock principles of finality and ripeness to let the commission go through that process. And I want to analogize this case to the National Treasury Employees Union case we discussed in our brief. It's a canonical ripeness case. And that case involved the constitutionality of the line item veto. Somebody wanted to bring a challenge to that. It's a pure question of law. We're not saying that it required further factual development. It was a constitutional question. And yet what this court recognized is there's a prudential aspect to ripeness that sometimes it is more appropriate out of separation of powers concerns to let the prematurely on the front end. You may never need to decide it. And that certainly describes this case. The commission hasn't raised. Sure. But here's what I'll say. Is your best case standard of law, which is about finality. The case you most discussed is Axum, which is a case about when 1331 was recent. There's a lot of overlap in those doctrines, and you could possibly exhaust you if you want to that 1331 cases than you are on prudential rights. And if you compartmentalize a little bit and just think about prudential rights, meaning the court has said it's a sort of disreputable doctrine and we don't like prudence doctrines and we're not going to extend it and we may reconsider it. And we've said when there's a purely legal question at issue, we don't worry too much about So I don't think I'm the one doing the, I absolutely take your point, your honor. And you're right that we do discuss some of those cases interchangeably. But part of the reason we do that is because this court has done the same thing. And in particular, one of the cases we do cite is that Thai court case where one of the, yeah, the three-way split. And if you look at footnote seven of Judge Williams' opinion in that case, it was about 87. It's a little log in tooth. I understand. But if you look at that case, footnote seven of Judge Williams' opinion, that it cites to a 1984 decision of this case called public citizen health, where the court basically said the finality and the prong one of rightness, two components converge and can basically be treated interchangeably. I would add that of course, FTC versus Standard Oil, the first Abbott Long's, the fitness for judicial review, fitness for question. I don't agree with, I think national treasury employees union says there's more to fitness than just, is it purely legal? Whether or not that it's not just collateral on this. It's, is there an opportunity for this case to go away? Essentially, can this be resolved by the other gets involved. The statement, and I'm paraphrasing here, but I think pretty closely, the often unstated that the prong one incorporates the often unstated, but true proposition that if we do not decide this case now, we may never need to decide it. And that's true even for pure questions of law, like the constitutionality of the line item veto. And of course, FTC versus Standard Oil, which we discussed at length is had itself discussed as Abbott Labs with quite heavily. So I do think these doctrines can't be put while you're certainly right, that they are separate lines of cases. There's a fair amount of overlap there. The other thing I'd point out is I don't understand Mr. Sydak to be taking issue with the fact that if he were arguing to this court, for example, those same legal defenses, he's protective order scope doesn't reach the transcripts. It only reaches the primary documents that this suit would be on the right. And the reason for that, yeah. Yeah. Oh, no. I mean, that seems to prove too much. So if you take the, you know, the problem on the prudential rightness, it includes building issues go away, and you mix and match with 1330 model, you get, you know, axon within. Right. And I agree. You should only take it so far. And who is the unconstitutionally appointed or insulated? So I think the reason that's not true, and this is crucial in axon is axon said there was a particular here and now injury. It's not, will this case go away? Will the FCC or the FTC ultimately decide to sanction axon or to sanction Mr. Cochran? But rather, the here and now injury was in, and this is I'm quoting from page 192 of axon. And this is the key element of that decision being held before a quote, unconstitutionally structured decision maker. And that is the distinguishing feature of axon. It's the basis on which the court said, this isn't at all inconsistent with standard oil. We have no renewed enthusiasm for review, but this is a special case. There's an exception when you're being subjected to an unconstitutionally structured decision maker. And I want to emphasize that Mr. SIDAC has not challenged the jurisdiction or the constitutional structure of the ITC itself. And in fact, at oral argument district court, you can see this at JA 142, he expressly said he wasn't challenging jurisdiction. I think that reading would be far too broad because if you think of improperly commenced because the requisite statutory threshold for starting it, whether the commission had reason to believe that there was a violation was not met. Now imagine that standard oils lawyers had just tacked on a due process claim and said that is evidence of an absence of due process or a first amendment retaliation claim and said that is evident because they are proceeding on such patently insufficient evidence in starting this, they're bowing to political pressure. This is clearly retaliation for our public opposition to the administration. I don't think FTC versus standard oil comes out any differently post-Axon. So first of all, well, I said that hand in hand with his consent in November of 2017. And you'll forgive me, that's very important to me to emphasize. But what makes this different is, is the decision maker unconstitutional? There will be lots of cases. For example, if somebody wanted to bring a constitutional challenge to the FTC Act and say there was some defect in it, I think even post-Axon, and that's sort of analogous to the Elgin case, right? In Elgin, somebody was facing potential repercussions based on the draft, a failure to register for the draft. There was a threshold constitutional equal protection challenge to that and there was no question that was the kind of case situation where it was a pure legal question, it was the kind of thing, it was a facial challenge. And yet in Elgin, the Supreme Court still said you have to go through the administrative scheme. Now, again, that's a Thunder Basin case, and I am mindful of your point earlier, Judge Katsas, that I don't want to conflate doctrines too much. But the mere fact that somebody is saying the basis for the proceeding suffers from some inherent constitutional flaw, I think proves far too much. Absolutely, yeah, so you can get a declaratory judgment as opposed to an injunction, absolutely. So even before we get to whether they're... Right, so for the third argument, the third argument we've made in our brief is the district court committed legal error in failing even to consider the public interest. And in particular, the fact that this is a order that was designed not only to protect the commission, but also to protect the confidential business information of Apple and Intel and third parties who responded to discovery requests over the course of that proceeding. And under this court's recent decision in Zuckerman, for example, even if you think he was entitled to prevail on the merits, and of course we think he's not, but even if you get past that, deciding that he's entitled to prevail on the merits doesn't answer the separate inquiry of whether or not he's entitled to an injunctive remedy. And a failure to even consider the public interest is just per se error. To the extent we're even talking about civil property, but denying equitable relief because they're unlikely to succeed on the merits and there's no record of which. It's the only controversial factors one and two. Factors three and four are subject matter jurisdictions. So you have a pretty steady mission. Well, I actually do want to push back on that a little bit, but there are a couple points I want to make here. So one point I want to make is I'm very glad you noted the chronology here. There was the parties agreed to converse the PI. And at that point, both parties just briefed this as cross motions for summary judgment. And neither side was really engaging with the equitable factors. The second thing I want to emphasize is that though we certainly didn't brief. Well, it's converted into motion for summary judgment was the focus. But I want to emphasize that the equitable considerations that we're pointing to in this court were absolutely before the district court. Now, I don't want to mislead the court. We did not frame this in terms of the equitable analysis. We were making these points in the context of other arguments. But if you go to JA 123, which is our district court brief, and then JA 183, the oral argument before the district court, we were talking about the same sorts of equitable considerations that our brief in this court talks about. The other thing I want to emphasize is your honor says, well, it's not jurisdictional. And I think that's right, but with a caveat, which is one of baked into the preliminary injunction or the permanent injunction analysis is a recognition that sometimes an injunction is going to impact not just the two parties before the court, but the public at large. And I think that's particularly true when a court is considering basically declaring void and unenforceable in order, the primary purpose of which was to protect non-parties to the proceeding. And when the court enters an injunction without even accounting for that fact, and without even referencing the public interest, I think that is the kind of error this court can and should address. Well, I think this court often for an abuse of discretion standard, the court will sometimes say the lower court committed an error of law in failing to account for something. We send it back so that the court can apply its discretion in the first instance. I don't think that's remarkable. The other thing I want to emphasize here is there are intermediate steps you could take. For example, you could say maybe Mr. Sydak shouldn't be sanctioned, shouldn't be subject to some kind of disciplinary action. And I think on the basis of his conduct, but the commission can and should be able to at least ascertain the relevant facts and make sure he at least destroyed to the extent he still has any Apple or Intel or other information that there's a balance that needs to be struck here to make sure he doesn't continue to retain information that potentially could leak even if he's not planning on selling it or posting it on the internet. Now that he has the protection of this injunction, as long as it's on his computer, there's a risk of leak. And you could certainly imagine an equitable analysis here that takes account of Apple and Intel's interests. Though I do want to emphasize the commission's interests here are substantial as well. People rely on the commission to conduct the kinds of adjudications that require consideration of very sensitive information. Congress recognized that and we don't want that undermined. Well, there are two answers, Your Honor. So what one is, of course, because there's already a well established principle that protects commission orders from concluded proceedings, which is the it's not like that would resolve everything. You know, Mr. Sidak at times says there was an easy fix here. But then if you look at page 36 of this brief, and particularly footnote two, he actually says, I don't think we could have, if we had just purported to reopen a thousand long concluded investigations, issue a blanket ratification, and then try to enforce that without getting new signatures from everybody. We may well have that power to do that. And frankly, depending on how this case comes out, maybe we'll have to try. But I think if you read Mr. Sidak's brief and particularly page 36, I think it would be foolish to assume that that would have just resolved the question, wouldn't have opened up new litigation. But to the extent of all equitable consideration, it seems like they could have solved. No, the footnote I'm referring to actually questions whether ratifications are even affected. Thank you, Your Honors. Good morning. May it please the Court. We're here today because to this day, six years after Lucia, the ITC still hasn't fixed its Lucia problem. The agency has never done anything to address orders entered by ALJs whose appointments were unconstitutional under Lucia. Instead of fixing the problem, the agency is doubling down and instead insisting that this court should allow it to enforce an order that it concedes is unconstitutional. As the district court recognized, that turns the law upside down and makes this an easy case. An agency has no right to enforce an unconstitutional order. That's basically the affirmative part of my case, which is an easy case. The agency tries to avoid that by saying, oh no, you're too early and you're too late. And the agency is wrong on both scores. I'm happy to address the too early arguments or the too late arguments or whatever the court is interested in my addressing. We are focusing on Lucia, which was the ALJ presiding in the dispute between Appleman. This is a separate proceeding for a lawful restructure. Correct. Which is, Judge Rao? The injury of being put into a proceeding whose adjudicator is either unlawfully appointed or unlawfully insulated from residential control. Right. But as Judge Rao pointed out, the sole basis, and my friend conceded, the sole basis for this new proceeding, the proceeding directed against SIDAC, is alleged violations of the protective order entered by that stop the agency from doing anything beyond the four corners of the protective order. The injunction says defendants are hereby enjoined, and this is a JA 229, from using the protective order from the 337 proceeding investigation as a basis for investigating and or sanctioning Plankton. So again, the proceeding that we have now is a proceeding aimed solely at enforcing an unconstitutional protective order. It's not- But your merits theory is a little bit different, right? Your merits theory is that this proceeding before a lawfully structured tribunal has some unconstitutional- A hundred percent, because it is a- It's a different- Fair enough, your honor. In other words, yes, we concede that this is not an adjudication before an improperly appointed adjudicator. It is a proceeding aimed solely at enforcing an order entered by a conceitedly improperly appointed adjudicator. There's no other, as the questioning with Judge Rao made clear, there's no other, there's three grounds, no assertion that there's multiple grounds. The only basis for this proceeding, the only subject of the injunction is the use of the protective order. The agency is correct that is distinguishable from Axon and other cases in that sense, but that's really a distinction without a difference in the sense that it is a- I'm sorry, your honor, where are you? Thinking about it. I'm going to do the mix and match, which is the general rule is standard order. You're a defendant in an administrative enforcement action. Don't like what's happening to you. You're claiming legal error, you're legal future, on and off, can't sleep at night. The general answer is that's just, that's part of the ordinary duty of citizenship, and when the case is over, you can make whatever argument you want. Correct. Again, that's the general rule. That is the general rule and we do not ask. It's the exception at least when you are thrown into, thrown before an adjudicator unconstitutionally. Well, that's the question, and Axon itself said, is this case more like free enterprise clause or more like Elgin? And we submit that this is more like Axon or more like- 100% more like Axon because we're not seeking anything to do with the outcome of the agency proceeding. We're challenging the fact of the agency proceeding. It's the here and now injury of being subjected to the enforcement of an unconstitutional order, which is a structural problem. This case is within- We're just drilling down on individual cases and treating Axon as unconstitutional. Illegitimate proceeding or illegitimate proceeding led by illegitimate- Illegitimate proceeding, again, that's the language of Axon, but it's a structural constitutional problem that is completely divorced from the merits. Some of the decisions they're talking about, like they had a constitutional question, which is, well, it's a due process problem if there's no factual basis, and your honor, Judge Rao, you were on a panel in a Loma Linda case last year that raised some questions about how would this apply in the context of a Leedem versus Kine religion act case. There are some tricky Axon-related issues that are floating around in your radar screen as the DC circuit, but this case where the claim is the structural constitutional claim, they are here and now. It's this Mr. Seideck, my client, his constitutional section 1331 claim is the exact same claim. It is a claim that my rights under the appointments clause, my structural constitutional rights, which have nothing to do, the merits could be about widgets. We have nothing to do with the way that process turns out. It is, I have a right not to be hauled in to this improper proceeding. Again, improper why? It's improper. It has nothing to do with the merits. In some sense, even their standard oil hypo had to do with the merits, if there's no due process claim, but that Leedem versus Kine, it's a little more meritsy. This claim is exactly the same. I'm sorry. Correct. In other words, I think the angel hypothetical, what my friend just said is, well, in FTC, they could say, well, the statute, the organic statute doesn't give you that power or there might even be a constitutional problem with the organic statute. Those are much more closely aligned with the merits. I think at this court may find, and the courts generally may have some very interesting work to do on axon and how far that extends. But this case, which is a, it's literally an appointments clause challenge. A hundred percent different. And in fact, the injunction doesn't prohibit that the injunction only says in JA 229, they're, they're enjoined from using the protective order. Correct. Correct. We, the here and now injury is, is not the investigation person. It's the use of the, the, the, the, the, an order entered by improperly appointed ALJ. Okay. So on that, what they are really making is a Johnson versus Zerbst waiver argument. The agreement, let's just, let's look at that agreement. What it literally says, I have it here in front of me, it's JA 48. It says, I agree to be bound by the terms of the protective order. Okay. We all agree to lots of things. That is not an agreement to that, that the, the, the, the judge who entered the order, the ALJ was constitutionally appointed. I mean, the, the, the, the notion that if Mr. Sidak didn't use the appointments clause as a sword to immediately attack the ALJ's appointment, when he's an expert witness, all he did is agree to abide by the terms of the waive any right. Again, the Johnson versus Zerbst standard for waiver of a constitutional right is a knowing waiver. Where in here does it say I agree to waive any objection later? I mean, he's agreeing to abide by that. That assumes that it's valid. He's not agreeing. He's not giving up anything to use it as a shield in a subsequent enforcement proceeding. Well, you could, and that is very much the way the government is trying to push it, but they're enforcing proceeding. It's not a breach of contract proceeding. It's a breach of protective order proceeding. I don't know that they would have the statutory right in an administrative proceeding to do a breach of contract. That goes into Crowell versus Benson and what the administrative authority could do. I mean, maybe there could be a contract. I mean, again, this is just not a breach of contract claim, but we are not arguing here. I want to be very, very clear on this, that the only dispute here is about their attempt to give effect to this protective order. And what's kind of weird here, frankly, is that they're saying it's too early. Their argument is that they should be allowed to proceed with an investigation of a proceeding, possibly to impose sanctions for a protective order that they've conceded in this proceeding is unconstitutional. They've not defended the merits of this. So this is a particularly weird situation. I think Judge Katsas, you asked a question to my friend about this, like what on earth are you all doing trying to proceed with this proceeding to enforce something that you've conceded is unconstitutional? The only answer I can think, well, sorry. That aspect is very startling. I just wonder if the question of, is this more like standard or oil, or is this more of an axon, need a little bit more categorical answer. This is startling because the appointments clause question is so clearly undisputed and the purpose of the enforcement action is so clearly exclusively to enforce the unconstitutionality. To what end? I mean, so why shouldn't we think which class of case we're assessing is the defendant is in the enforcement of the proceeding or a lawfully prosecuted tribunal and is arguably the object of the proceedings? Because I get that, but again, it's somewhat shocking where you have, where they have conceded that the thing they want to enforce is invalid. Well, no, but again, I think you, Your Honor, yourself had pointed out that axon, they brought out one snippet of axon, which said something about the adjudicator, but I think as Your Honor, yourself have, there's lots of other places in axon, not even to mention Justice Gorsuch's concurrence, where he is talking about, we have 1331. I mean, the whole, a lot of these doctrines, Thunder Basin, they are doctrines of administrative regularity and that's fine. But again, where you have a, somebody who has a structural violation, particularly here where it's a conceded structural violation that lies at the root of the only thing the agency is trying to enforce. Again, I think this is probably the best answer to this, which is to say, I'm sorry, Your Honor. Where everything can come into district court now depends on how obviously unlawful the agency is. Fair enough. Look, that is almost a, that is almost a, that's a very difficult standard. Again, I think where it is a structural constitutional argument based on the appointments clause, at least, okay. I mean, this literally is the same structural constitutional claim that axon said imposed a here and now injury. So the question that they're presenting, that they are positing that there is a dispositive difference between saying that the, your appointments clause is to the challenge is directed only at the adjudicator of that challenge or versus something that is at the, the underlying order. That is the sole basis for the entire new proceeding. If whereas here, the, the only basis for this proceeding is to enforce an order that is concededly entered in violation of the appointments clause. Again, it seems to me that that easily falls within both the spirit and the letter of axon as saying, what on earth would you allow this to go? There are many different, I'm sorry. All right. Let's see. Again, well, some first amendment claims may be more bound up in the marriage. This is actually very similar to the Loma Linda case that, that where, where judge Rob was on the panel, where there was a lead them versus kind argument that somebody said, I have a first amendment, right? Not to be subjected to this. A marriage panel said that the majority over judge Rouse dissent said that is really just a statutory argument that is intertwined with the facts. Again, that the F that the FTC versus standard oil argument hypothetical that my friend presented to you where he said, well, there's zero factual basis for the proceedings. So that's a due process clause. I mean, I think you can draw distinctions where those things are in some way tied up with the merits. This appointments clause issue has is a structural constitutional issue that has zero to do with the merits as we know, because the court in axon has already said that. Now, again, they were saying that in the context of the adjudicators before it, but it's the same principle that where the claim has nothing to do with anything to do with what's going on in this administrative city and could not nothing that happens in the adjudicative proceeding could in any way, they've never suggested any way in which that could shed any light on this, that, that, that whether or not he filed that or has any bearing whatsoever in any conceivable way. The only argument they've made is to say, well, we may wind up deciding in his favor. That actually, as axon and carver's assault makes clear cuts in our favor because the here and now, if they apparently what they're trying to do or what they're saying, they have a right to do is continue to impose all these costs and uncertainty on Mr. Sidek and then say, oh, guess what? We've decided not to impose a sanction. They almost have to do that because they've conceded that the only order on which they're basing the proceeding is unconstitutional. So any sanction that they would impose would have its death warrant on its face. If he decided to go to court, what they want to do is really an abuse of the administrative process. I mean, I think this case presents to this court, probably the starkest example of what you will see is a, just a naked abuse. I mean, this wolf is coming as a wolf. These people are not coming here in order to, to, um, you know, validate some otherwise legitimate process. The only basis, again, I think this, this goes, again, if it, if it were some other basis, right. I think that at least that, that isn't, that is a, that is one of the hard axon questions. I'd say our case is an easy axon question, right? I mean, when you start to get into those kinds of questions, it starts to raise, if they just say this is improperly motivated, I think that probably is a standard oil versus exon thing. Again, I don't deny that that is the background rule. I think though, if you, if you take the same approach that the Supreme Court did at axon, and I understand axon is a Thunder Basin case, but it's the very same kinds of issues. Again, I think those kinds of things that were, where you have to even think of the merits. Sure. That's it. There's a statute that, and there's regulations. Yeah. Unconstitutionally appointed, ALJ issues, second order, arguably, possibly, allegedly violated the Constitution, structurally, ALJ, second order. In this proceeding, if you think of it like that, proceeding is for this violation, proceeding is by perfectly legitimate constitutional appointment decision making. Now, yes. And it's for this violation of a statute and regulation that are completely fine. And the contempt of order is really just a piece of ethic showing that you violated that perfectly fine regulation. Your Honor, if that were the case, that this would be a different proceeding. Again, I think, and I think that was Judge Rao's first question to my friend, is this a case about a violation of the protective order or some other statutory or regulatory? Is it violating the protective order or is it most violating the basis of the contract to be free to abide by the protection order? Oh, my scenario is, is this proceeding from a violation of a regulation that said, okay, sorry. No, but clearly, it is, if you look at the May 25th letter, I think it is clearly the, just look at the first line. Dear Mr. Sidek, this letter concerns a possible breach of the administrative order, APO, issued in blah, blah, blah. That's JA 49. And again, Your Honor, we know, if it were something broader, as your Honor's question is asking, that wouldn't be that is enjoined by the injunction. It's a very narrow injunction that the district court entered in this case. If you could separate that from the protective order, I mean, I guess that raises some very tricky issues. Are you bringing the, I think that order seems to me to be entirely contingent on the validity of the protective order. So I don't think that regulation alone, thou shalt not violate a protective order, is really a statutory or regulatory basis independent of the, I think I still, if I'm understanding your hypothetical correctly, I think that would be covered by the injunction. So I don't think they can just be cute and say like, oh, we're no longer protected, we're now the rule. But as long as it is about the protective order, again, entered by an unconstitutionally appointed agency. You know, again, you asked my opponents this question, my friends this question. Why don't you guys fix this? We wouldn't be here if they had fixed this. And that goes back to the equities of this. That's what's so weird that the incentive, we're here in the DC circuit today using all of our time when this agency could just have fixed it as other agencies did. Well, he has made clear in his affidavit, which again, that's a whole other part of this case that isn't here, but the coercion of that affidavit, that he destroyed the parts of the case file that were beyond the confidential, the hearing transcript. Again, let's go back to the genesis of this case. This is about his use of pin sites to a confidential hearing transcript where he was filing FOIA requests. They turn and says, aha, gotcha. This means you're violating the protective order, right? They have never alleged that he violated, that he actually disclosed anything. Correct. And again, you're going to the equities of it. Anybody may remember that there's no obligation to erase your memory. Well, again, that's why I think they should try to fix this immediately. It's not yesterday. No, I mean, no, right. I guess I don't. Yeah. I mean, I guess as we stand, as we, as we are here together today, right now, there is no legally valid thing stopping people. Our only point is to say, when they bring up this parade of horribles, they bring up Apple, they bring up all these other companies, right? They can fix that. You don't need under the statute of regulatory authority they have, they could fix it today by entering, you know, some kind of an order saying anybody who received confidential information under a protective order entered by an unconstitutionally appointed judge is prohibited from doing that. Until they fix that, though, they can't go around and say like, oh, no, we have to have the obligation to enforce an unconstitutional order. With respect to CIDAC, it's too late. Yeah, they can't, they can't. Well, no, I'm sorry. I thought I was going back to Judge Walker's hypothetical. He asked me about things that Mr. CIDAC might do in the future. If they, if today they entered an order, they could certainly stop Mr. CIDAC. We don't say Mr. CIDAC gets forever and for all time, carte blanche to do whatever he wants. At least until there's a protective order, Mr. CIDAC and anybody else whose conduct is governed by a pre-2018 protective order is prohibited. Why do I think they have an issue? Well, they have, oh, your honor, that's a long answer about this agency. This is an agency that even after Lucia, if you look at the federal register notice in September of 2018, which is in the record, they continue to insist after Lucia that they never had a Lucia problem because the other 10 years ago in free enterprise, this court said multi-member enterprise is the head of the agency. The head of the department is the whole agency. So this is an agency where accountability is an extremely foreign concept. This dispute should never have arised in federal court. It is a shocking manifestation of where we are in administrative law in the year 2024 that we are debating this and the federal government is coming here and saying, yes, please give us carte blanche. Please overturn this injunction that stops the agency from using a protective order that the agency has conceded is unconstitutional. So again, your honor, it blows my mind that they have not tried to fix it. I think they think they can get away with it. And so I'm going to end with the district court's opinion, which very carefully, and again, underscores the narrowness. The district court said, look, if this were parties, different story. Parties have their rights and obligations at issue. They have certain obligations. We have never in this country had a world where anybody who has any kind of obligation entered into confidentiality, decorum in court. If somebody in the court starts disrupting this court, right, we all have certain obligations. That doesn't mean that you have a certain implicit obligation that you're waiving your right thereafter as a non-party. If there ever is an enforcement proceeding against you to bring whatever defenses you might want to bring. That has never been the law in this case. And so I think in this country, and I think their attempts to enforce this order, take administrative law well beyond where it has ever been. Two reasons, your honor. Well, two reasons, your honor. This remedy provision, and I invite you to look at the briefs below on this, and I urge you to do that. I know you have, that came up, right? They have an obligation, right? They never challenged three and four, right? Everybody agreed. Well, again, he didn't need, but that, if we're going to misstate, if that didn't exist, that's not critical to his reasoning. The only, I think his point is the only remedy that is, okay, when you have a more traditional way that one of these appointments cause challenges comes up, like in Lucia, it's reassignment for adjudication before a properly appointed decision-maker. When the agency, it's almost crazy to imagine this is what is happening, but this is the nightmare that Mr. Syedig is living in. They have decided to actually try to enforce a concededly unconstitutional order, right? And so the only remedy to stop that is to stop that, right? You can't go and reassign anything to somebody else, right? They never disputed that point. That was kind of the clear thing. And with respect to the, they never said there was some other adequate remedy at law. They never suggested that. With respect to the public interest factors, the district court, if you look at JA-227, he does say if any, so in other words, let's just go to the procedural point. This is bedrock law that you as the DC circuit are not a self-directed board of inquiry looking for possible mistakes. A lawsuit has a certain proceeding in the adversary system, and the government is a very worthy adversary. If they thought that the court could not enter an injunction because of the public interest considerations, it was up to them to tell the district court, you cannot enter this because of these public interest considerations. They said boo about that. Now to come up on appeal to the DC circuit and say, please vacate that because we've now come up with these other arguments. In any event, so that's the procedural argument that there has never been in the history of American law as far as I'm aware, some argument that the injunctive factors are impervious to the normal rules of waiver and forfeiture. But even on the merits, the district court actually does say on JA-227, if any broader reliance issues, interests are affected in this case, the commission is to blame. Unlike other agencies, the commission took insufficient action. That is a complete answer to their argument about the alleged equities here, the apples of the world who are going to be suffering. They can fix it. The answer is not yes, go ahead and continue. We're going to withhold an injunction. Go ahead and continue to enforce the conceitedly unconstitutional order if you look at, we made this point in our brief. It's very interesting. They don't ever say this is impossible to fix. There's one sentence on page 30 of their reply brief where they say, well, it's complicated. Okay. Well, many things are complicated in life, but that doesn't mean that that means that they can basically be allowed to enforce an allegedly, or a conceitedly unconstitutional. There's no further questions. Thank you. Thank you, your honors. You've already been very generous with your time. So I just want to make a few quick points. First, I want to emphasize that I heard Mr. Landau repeatedly refer to a structural constitutional error in dealing with the axon type issue here. I just want to be clear that the district court here expressly said the opposite at JA-213. This is not the kind of structural challenge that involves being held in front of an unconstitutionally structured decision-maker, which inflicts a here and now injury, regardless of the outcome. His alleged injury here is much more limited. It is tied to the potential outcome of the proceeding, not the mere fact of having to appear before the ITC, who he concedes at JA-142 has jurisdiction. Second, he asks, why are we even doing this? Why is the ITC, this Javert-like entity going out there? And I think there's two answers to that, that I want to emphasize. The first is that it's important to the commission, at least to ascertain the facts here, which it has not been allowed to do. He says, all they had were some pin sites in a FOIA request. That's where it started. And then when we asked, it turned out until recently, he'd kept his entire case file. That's what came out in the affidavit. So the fact that when there was an initial thread that the commission started pulling on, I think is certainly relevant. If he's been disclosing information, we don't know that yet. He said he hasn't, but the commission hasn't had a chance to drill in. Obviously that would implicate a far broader range of concerns. The other aspect I want to emphasize here is I heard him repeatedly say, we concede it's invalid. And I think that the protective order is invalid. And I think that that's not a great encapsulation of our position. What we haven't contested is that the ALJ wasn't properly appointed when it was issued. But under traditional principles of finality, the commission does not believe that it is enforcing an unconstitutional or unenforceable order. Before Lucia came down, literally millions of decisions were issued by ALJs in dozens of agencies. And for the most part, there were some Lucia claims preserved and the number is dwarfed by the number that everybody has just assumed continue to have vitality. And yes, the government routinely continues to proceed on the basis of the validity of ALJ decisions that were issued pre-2010. The last thing I just wanted to do was Judge Walker. That's the timeliness argument, not the consent argument, and which goes into the collateral attack in the rider point. And the last thing I just want to do, Judge Walker, you were asking about the regulatory scheme that underlies the protective order and what's being enforced here. I would refer the court to 19 CFR 210.25, which provides exactly as much information as the court can. So I get that you're not just proceeding because he failed to do something. He just like asked for protective order. He told me how it would be. But is your perspective, is the way you're proceeding works as follows. Usually, there is a statute authorizing a regulation. The regulation does not challenge. The regulation says, you cannot violate it. And you are bringing, which will enforce the proceeding against him for violating the valid regulation that says you cannot violate it. So I think they go hand in hand. Part of the problem, this proceeded on the basis of letters to this point. So it was started with a letter. It's captioned, you know, possible breach of the protective order. But the reason the commission, the regulatory authority underlying that. So to that extent, when I answered Judge Rao, what I was certainly saying that we are proceeding on the basis of the protective order, not a contract theory, not just a bare violation of statute, independent of the protective order. But the protective order very much goes hand in hand with and the reason we have authority to enforce it is because of this underlying regulation. We can't do that. I want to be clear. So honestly, and the court should be aware of this. These are laid out in 220, I'm sorry, 210-134.C. Mostly, it's like letters of reprimand. Could be a private reprimand, could be a public reprimand. If it was more, the more that they escalate, the most extreme things we can do are bar you from practicing before the commission and a potential referral to like your state bar authority. Yes, absolutely. Not with individual protection. That's correct. Thank you. Thank you. Thank you, Your Honor. Thank you to the council for your excellent arguments. The case is submitted.
judges: Katsas, Rao, Walker